6-CV008751

# STATE OF NORTH CAROLINA

WAKE County

File No.

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
WILLIE D. BULLOCK
Address
3025 TIMBERLYNE DRIVE
City, State, Zip
MEBANE, NORTH CAROLINA 27302

VERSUS

Name Of Defendant(s)
SECRETARY JANET NAPOLITANO, DEPARTMENT OF HOMELAND SECURITY UNITED STATES DEPARTMENT OF HOMELAND SECURITY

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

G.S. 1A-1, Rules 3, 4

RECEIVED
FLETC LEGAL COUNSEL
2009 MAY 2 AM 10: 21

To Each Of The Defendant(s) Named Below:

Name And Address Of Defendant 1
SECRETARY JANET NAPOLITANO, DEPARTMENT OF HOMELAND SECURITY UNITED STATES DEPARTMENT OF HOMELAND SECURITY
WASHINGTON DISTRICT OF COLUMBIA 20528

Name And Address Of Defendant 2

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)
James Hairston, Jr. - Hairston Lane Brannon, PA
230 Fayetteville Street, 3RD Floor
Raleigh, NC 27601

Date Issued: 5-1-09  Time: ☐ AM ☐ PM
Signature

☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

☐ ENDORSEMENT
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement  Time  ☐ AM ☐ PM
Signature

☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

NOTE TO PARTIES: Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts
(Over)


GOVERNMENT EXHIBIT 1

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

Service Fee Paid
$

Signature Of Deputy Sheriff Making Return

Date Received

Name Of Sheriff (Type Or Print)

Date Of Return

County Of Sheriff

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative Office of the Courts

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | FILE NO.: 2009CVS -1 AM 11: 56 |

WAKE COUNTY, C.S.C.

BY _____

WILLIE D. BULLOCK, )
                         )
       Plaintiff, )
                         )
v.                        )
                         )    **COMPLAINT**
                         )    (Jury Trial Demanded)
JANET NAPOLITANO, )
SECRETARY, )
UNITED STATES DEPARTMENT )
OF HOMLAND SECURITY )
                         )
       Defendant. )

NOW COMES Plaintiff, Willie D. Bullock (hereinafter "Mr. Bullock"), by and through the undersigned counsel and complaining of Defendant Janet Napolitano, and hereby alleges and says as follows:

## NATURE OF THE CASE

This is a statutory and common law action for violation of Title VII of the Civil Rights Act of 1964; Gender Discrimination, Racial Discrimination, and Wrongful Termination, in violation of N.C.G.S. § 143-422.1 *et seq.*; and common-law violation of Negligent Infliction of Emotional Distress.

## PARTIES AND JURISDICTION

1. Plaintiff Willie D. Bullock is an African-American Male residing in North Carolina.

2. Defendant Janet Napolitano is a Federal employee, appointed by the President of the United States to the office of Secretary of the United States Department of Homeland Security.

3. This court has jurisdiction over the subject matter of this action under the common law of North Carolina and pursuant to the judicial power vested in the General Court of Justice by N.C. Gen. Stat. §§ 7A-3, 7A-240, and 7A-243. As to plaintiff's claims that are grounded in federal law, this court may exercise concurrent subject-matter jurisdiction.

4. The jurisdiction of this Court is invoked to redress the deprivation of rights guaranteed by federal and state laws, for damages caused by Defendant's gender discrimination and racial discrimination. Plaintiff seeks damages including but not limited to, deprivation of constitutional rights, compensatory damages, loss of past, present and future benefits, and all incidental damages. Plaintiff also seeks attorney's fees as allowed by law and equity.

## FACTUAL ALLEGATIONS

5. Mr. Bullock was hired as a Federal Air Marshall (FAM), grade G, to be stationed at the Chantilly, Virginia Field Office.

6. The FAM program is organized under and administered by the Defendant.

7. Mr. Bullock was sent to a training facility (FLETC) in Artesia, New Mexico, which training was a requirement of his position as an Air Marshall.

8. On October 10, 2006, during Phase I of the training program, Mr. Bullock was injured during training exercises.

9. On October 20, Mr. Bullock's injuries were diagnosed as shin splints.

10. On October 26, the FTELC Health Unit Staff determined that Mr. Bullock was able to participate fully in all training programs.

11. On October 27, the FTELC Health Unit Staff again diagnosed shin splints, and restricted Mr. Bullock from running, jumping, kneeling, squatting, marching, baton or defensive tactics and lower body weight lifting.

12. On November 3, Mr. Bullock visited an outside orthopedic specialist who performed an MRI, at which point the diagnosis was switched to a left tibial stress fracture and a stress reaction in his right tibia. X-rays performed at the same time showed no discernable fracture, and the only restriction placed on Mr. Bullock at this time was no running for two weeks.

13. On November 6, FTELC Health Unit Staff, ignoring the orthopedic specialist's diagnosis and recommendation, recommended complete immobilization and no weight bearing on Mr. Bullock's left leg for four to six weeks.

14. Further medical testing by an orthopedic specialist on November 9, confirmed that the initial diagnosis, shin splints, was correct, and there were no stress fractures. At this point, Mr. Bullock was told by the specialist to refrain from running, jumping, and high-impact lower body exercises for two weeks, but he was otherwise completely free and able to perform all other training activities.

15. On November 13, the FLETC medical staff changed Mr. Bullock's restriction to explicitly allow him to participate in all upper-body physical activity without restriction as well as low-impact lower body activity.

16. None of the restrictions placed on Mr. Bullock would have prevented him from participating in the required training activities, or completing any tests or exams required for graduation as scheduled on November 21.

17. On November 16, Mr. Bullock participated in, and passed, a baton skills test administered by Mr. Montano.

18. On November 17, Mr. Bullock was told he was not cleared for OC gas spray training. Mr. Bullock was sent to the medical staff, who reiterated that Mr. Bullock's only restrictions were no running or high-impact lower body exercises.

19. Mr. Bullock was allowed to participate in OC gas spray class, as well as munitions training, both activities being equally or more high-impact than the baton skills test or baton exam.

20. On November 20, Mr. Bullock received a letter from FLETC stating that he could not complete the baton exam in time for his graduation the following day, November 21.

21. In response to this letter, Mr. Bullock sought out his instructor, Mr. Montano, who confirmed that Mr. Bullock's performance on the baton skills test had been sufficient to pass the requirements.

22. Mr. Bullock had also completed all of the other requirements of the training program.

23. On November 20, the same day Mr. Bullock received the letter informing him of his incomplete baton test, he received another letter, dated November 17, dismissing him from the FTELC program.

24. The dismissal letter dated November 17 stated that the training activities Mr. Bullock is alleged to have not completed would be waivable in some cases.

25. Mr. Bullock did not seek a waiver because he believed, and had been told, he had completed all training requirements.

26. Without a graduation certificate, Mr. Bullock would not be able to work as a FAM, the job he was hired to perform.

27. After receiving the dismissal letter, Mr. Bullock sought out the FAM Training Program Specialist, Randy Pitts, to explain that he completed the baton exam.

28. Mr. Pitts claimed Mr. Bullock had only completed the baton skills test, and that was insufficient, contradicting what Mr. Montano had stated to Mr. Bullock previously.

29. Mr. Pitts told Mr. Bullock that he would not have to start the training program over from the beginning, and that he would only need to take the baton exam in order to graduate with a future training class.

30. Several other trainees that were injured during training activities, some more severely injured than Mr. Bullock, were allowed to continue with training.

31. Upon information and belief, a (Caucasian) female trainee ███ tore the anterior cruciate ligament in her knee in the early stages of training, and was allowed to complete training despite a noticeable limp.

32. Upon information and belief, ███████ injuries required her to have surgery due to these injuries.

33. Upon information and belief, a (Caucasian) male trainee ███████ was placed on activity restrictions after injuring his shoulder during training, but was allowed to complete training.

34. Upon information and belief, a (Caucasian) female trainee ███████ injured her neck during training, and was allowed to complete training with a later class without having to retake any portions of the training.

35. Upon information and belief, a (Caucasian) female trainee ███████ and a (Caucasian) male trainee ███████ both of whom were recovering from injuries suffered during training, were told to "take it easy" during the baton skills test so that they would be able to take the baton exam later.

36. After his dismissal from the FTELC training program, Mr. Bullock was transported to his office in Chantilly with trainees who had graduated.

37. Other trainees who had not graduated were transported separately from the successful graduates and Mr. Bullock.

38. Mr. Bullock was the only unsuccessful trainee who was forced to travel with the graduates, and Mr. Bullock was embarrassed and humiliated.

39. When Mr. Bullock returned to Chantilly, he was informed by Gary McDermott that he would have to complete the entire seven-week training program again, despite the fact that he had only missed a few hours of class time on November 3 and November 9 while meeting with doctors about his injuries, and despite the fact that the only requirement he was alleged to have not completed was the final

baton exam, and despite the fact that Mr. Pitts had told him that he would not need to retake any part of the training program other than the baton exam.

40. Mr. Bullock has to this day been denied his position as a Federal Air Marshall.

## FIRST CLAIM FOR RELIEF

### (Violation of Title VII of the Civil Rights Act of 1964)

41. The allegations in paragraphs 1 through 17 are realleged and incorporated by reference.

42. By engaging in the discriminatory acts and practices described above, Defendant discriminated against the Plaintiff in the terms and/or conditions of his employment on the basis of his race, in violation of the Civil Rights Act of 1964, as amended.

43. By engaging in such discriminatory conduct, Defendant knew or should have known that its conduct would cause Plaintiff, or any other person of ordinary sensibilities, emotional distress, damage, injury, and suffering. Moreover, Defendant knew or should have known Plaintiff was certain, or substantially certain to suffer emotional distress as a result of Defendant's disparate and discriminatory conduct towards Plaintiff.

44. Indeed, as regards any person, severe physical and/or emotional distress is a natural and foreseeable consequence of the type of disparate and discriminatory conduct practiced by Defendant.

45. As a direct, proximate, and foreseeable result of Defendant's discriminatory conduct, Plaintiff has been damaged. He has suffered, and continues to suffer,

severe emotional injuries, including damage to his reputation, embarrassment, humiliation, depression, and severe emotional distress. Plaintiff has suffered, and continues to suffer, great pain of body and mind. As a further direct, proximate, and foreseeable result of Defendant's discriminatory conduct, Plaintiff has lost, and may continue to lose, opportunities for advancement in his career and the resulting enjoyment of life.

46. As compensation for the above injuries and losses, Plaintiff is entitled to recover compensatory damages from Defendant in an amount greater than Ten Thousand Dollars ($10,000).

## SECOND CLAIM FOR RELIEF

### (Gender Discrimination)

47. The allegations in paragraphs 1 through 43 are realleged and incorporated by reference.

48. Defendant intended to discriminate against Plaintiff on the basis of his gender and as a result, Plaintiff was subjected to disparate treatment.

49. Defendant's discrimination violates the letter and spirit of the protections afforded all persons, including Plaintiff, under N.C.G.S. §143-422.1 *et seq*, and violates the State's public policy prohibiting discrimination in the workplace.

50. Plaintiff was denied an opportunity to graduate from FTELC training despite finishing all training requirements, and therefore denied a position as a Federal Air Marshall, unlike similarly injured female trainees who were allowed to graduate.

51. Plaintiff suffered, and continues to suffer, injury as a direct and proximate result of Defendant's gender bias and discrimination that is actionable under N.C.G.S. § 143-422.1 *et seq.*, and in violation of the State's public policy prohibiting discrimination in the workplace.

52. Plaintiff suffered, and continues to suffer, mental, emotional, and physical trauma because of the gender bias and discrimination committed by Defendant.

53. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered damages, including but not limited to back pay, compensatory damages, loss of past, present and future benefits, pain and suffering, mental anguish, and incidental damages, in an amount to be proved at trial, but in excess of Ten Thousand Dollars ($10,000.00). Plaintiff is also entitled to all equitable relief allowed by law.

## THIRD CLAIM FOR RELIEF

### (Racial Discrimination)

54. The allegations in paragraphs 1 through 50 are realleged and incorporated by reference.

55. Defendant intended to discriminate against Plaintiff on the basis of his race and as a result, Plaintiff was subjected to disparate treatment.

56. Defendant's discrimination violates the letter and spirit of the protections afforded all persons, including Plaintiff, under N.C.G.S. §143-422.1 *et seq.*, and violates the State's public policy prohibiting discrimination in the workplace.

57. Plaintiff was denied an opportunity to graduate from FTELC training despite finishing all training requirements, and therefore denied a position as a Federal Air Marshall, because he is African American.

58. Plaintiff suffered, and continues to suffer, injury as a direct and proximate result of Defendant's racial bias and discrimination that is actionable under N.C.G.S. § 143-422.1 *et seq*, and in violation of the State's public policy prohibiting discrimination in the workplace.

59. Plaintiff suffered, and continues to suffer, mental, emotional, and physical trauma because of the racial bias and discrimination committed by Defendant.

60. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered damages, including but not limited to back pay, compensatory damages, loss of past, present and future benefits, pain and suffering, mental anguish, and incidental damages, in an amount to be proved at trial, but in excess of Ten Thousand Dollars ($10,000.00). Plaintiff is also entitled to all equitable relief allowed by law.

## FOURTH CLAIM FOR RELIEF

### (Wrongful Termination)

61. The allegations in paragraphs 1 through 57 are realleged and incorporated by reference.

62. By wrongfully denying Plaintiff the opportunity to graduate from the FTELC training program despite successfully completing the training requirements, and furthermore requiring Plaintiff to complete the entire training program again,

without receiving credit for those portions of the training program successfully completed, Defendant has in effect terminated Plaintiff from his intended career as a Federal Air Marshall.

63. The de facto termination of the Plaintiff violated the State's public policy of protecting and safeguarding "the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap . . ." N.C.G.S. §143-422.2.

64. The Defendant knew or should have known that the acts and conduct of its employees violated the spirit and intent of the State's public policy; as well as, violating the spirit of the protection afforded Plaintiff under the North Carolina Constitution.

65. Plaintiff suffered, and continues to suffer, mental, emotional, and physical injuries as a direct and proximate result of Defendant's discrimination that is actionable under the State's public policy prohibiting discrimination in the workplace.

66. As a direct and proximate cause of Defendant's wrongful termination, Plaintiff has been damaged in an amount in excess of Ten Thousand Dollars ($10,000).

## FIFTH CLAIM FOR RELIEF

### (Negligent Infliction of Emotional Distress)

67. The allegations in paragraphs 1 through 63 are realleged and incorporated by reference.

68. By engaging in the discriminatory acts, practices and conduct described above, Defendant has negligently inflicted severe and emotional distress upon Plaintiff.

69. By engaging in such discriminatory conduct, Defendant either knew or should have known that its conduct would cause Plaintiff, or any other person of ordinary sensibilities, extreme emotional distress, damage, injury and suffering.

70. Defendant either knew, or should have known that Plaintiff, as a dedicated trainee who voluntarily subjected himself to the physical, mental, and emotional rigors of FTELC training, was either certain, or substantially certain, to suffer severe emotional distress by reason of the Defendant's discriminatory conduct.

71. Indeed, as regards any person of ordinary sensibilities, severe emotional distress is a natural and foreseeable consequence of the type of discriminatory conduct practiced by Defendant.

72. As a direct, proximate, and foreseeable result of having witnessed, having been the victim of, and having attempted unsuccessfully to prevent and/or correct the discriminatory conduct which Defendant has directed towards Plaintiff, Plaintiff has been damaged.

73. Plaintiff has suffered, and is continuing to suffer, severe and painful emotional injuries, including damage to his reputation, embarrassment, humiliation, depression and severe emotional distress; he has suffered and is continuing to suffer great pain of body and mind; he has received medical care, attention and treatment for his injuries, will require additional medical care, attention and treatment in the future, and has incurred, and will continue to incur, substantial expenses for medical care, attention and treatment.

74. As a further direct, proximate and foreseeable result of such conduct, Plaintiff has lost, and may continue to lose, substantial wages, past and future, with a resulting loss of future earnings and enjoyment of life.

75. As compensation for the above-noted injuries and losses, Plaintiff is entitled to recover compensatory damages from Defendant in an amount greater than Ten Thousand Dollars ($10,000.00).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court:

1. As to the First Claim for Relief in this Complaint, Plaintiff have and recover from Defendants compensatory damages in an amount in excess of $10,000.

2. As to the Second Claim for Relief in this Complaint, Plaintiff have and recover from Defendants compensatory damages in an amount in excess of $10,000.

3. As to the Third Claim for Relief in this Complaint, Plaintiff have and recover from Defendants compensatory damages in an amount in excess of $10,000.

4. As to the Fourth Claim for Relief in this Complaint, Plaintiff have and recover from Defendants compensatory damages in an amount in excess of $10,000.

5. As to the Fifth Claim for Relief in this Complaint, Plaintiff have and recover from Defendants compensatory damages in an amount in excess of $10,000.

6. As to all appropriate Claims in this Complaint, Plaintiff have and recover from Defendants reasonable attorney's fees.

7. That the costs of this action be taxed against the Defendants.

8. That this case have a **Trial By Jury** on all issues so triable.

9. For such other and further relief as the Court may deem just and proper.

This the 18th day of May, 2009.

HAIRSTON LANE BRANNON, PA

_____
James E. Hairston, Jr.
N.C. Bar No.: 19687
Jay J. Ritz
N.C. Bar No.: 36276
Attorneys for Plaintiff
230 Fayetteville Street, 3rd Floor
Raleigh, North Carolina 27601
919.835.5295 phone
919.835.5299 fax

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the foregoing COMPLAINT was served on the following parties to this action via:

( ) hand delivery to:

( ) UPS/FedEX/Next Day Air to:

( ) Facsimile notice to:

( ) Electronic mailing to:

( ) Depositing a copy in the United States Mail postage prepaid and addressed to:

Secretary Janet Napolitano
UNITED STATES DEPARTMENT OF HOMELAND SECURITY
Washington, D.C. 20528

This the 1st day of May, 2009.

HAIRSTON LANE BRANNON, PA

James E. Hairston, Jr.
N.C. Bar No.: 19687
Jay J. Ritz
N.C. Bar No.: 36276
Attorneys for Plaintiff
230 Fayetteville Street, 3rd Floor
Raleigh, North Carolina 27601
919.838.5295 phone
919.838.5299 fax